**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-1843**

---

JERRY LAMB,

                                        Plaintiff - Appellant,

        versus

THE BOEING COMPANY,

                                        Defendant - Appellee.

---

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Alexander Williams, Jr., District Judge.
(CA-03-3128-AW)

---

Submitted:  December 5, 2006          Decided:  January 11, 2007

---

Before WILKINSON, NIEMEYER, and MOTZ, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

Aderson B. Francois, Student Attorneys Doreen Clay, Keri Fiori,
Elijah Forde, Tiara Higdon, and Errin Kennedy, HOWARD UNIVERSITY
SCHOOL OF LAW, Clinical Law Center, Civil Rights Clinic,
Washington, D.C., for Appellant.  Christopher A. Ott, KILPATRICK &
STOCKTON, L.L.P., Washington, D.C.; Richard B. Hankins, Susan W.
Pangborn, KILPATRICK & STOCKTON, L.L.P., Atlanta, Georgia, for
Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff Jerry Lamb appeals the grant of summary judgment against him on his claims that the defendant, The Boeing Company ("Boeing"), violated Title VII of the Civil Rights Act of 1964 by denying Lamb job transfers and promotions based upon his race or in retaliation for complaints of discrimination, and by subjecting him to an unlawful hostile work environment. We affirm.

I.

The facts taken in the light most favorable to Lamb, the party opposing summary judgment, were ably recounted in the district court opinion. Lamb, who is African-American, began working for the McDonnell Douglas Corporation in 1992, and became an employee of Boeing when the companies merged in 1996-97. Lamb voluntarily left Boeing in 1997, but rejoined the company in 1998 as a flight mechanic. The next year, he was promoted to Product Support Technical Specialist in Boeing's Patuxent River Naval Air Station facility ("Pax River") in Lexington Park, Maryland. His position involved working with aircraft engineering and maintenance information.

Lamb was temporarily moved from the day shift to the evening shift in August 2001 at his request. David Dickson was "team

2

leader" on the evening shift. Lamb alleged that when Dickson learned of Lamb's move to the evening shift, he told Lamb to refer to him as "Massah Dave." Lamb was offended and reported the comment to a supervisor, Rod Wisor, as well as to Human Resources Manager Michael Beeney.

Boeing took prompt action. Beeney spoke with Dickson and Lamb. Lamb had asked in an e-mail message to Wisor that Dickson apologize in writing, and Beeney drafted a written apology, which Dickson signed. Lamb signed a statement on the document that "[b]y his signature below Mr. Lamb accepts this apology and is willing to move forward with a common positive approach in the workplace." Lamb later expressed dissatisfaction with the company's handling of the incident, however, saying that he felt the company had not formally recognized or addressed his complaint. Lamb does not dispute that Dickson made no further offensive comments and that the pair had a professional relationship from that time forward.

Department Head/Skills Manager David Black had multiple conversations with Lamb about career development at Boeing during Lamb's years at the company. Black's job responsibilities included helping employees to develop the skills necessary for promotion. Beginning before the 2001 incident with Dickson, Black, who is African-American, advised Lamb to transfer from the

3

small Pax River facility to a larger facility where he would have more opportunities for career development. After Dickson's offensive remark, Lamb expressed to Black a desire to transfer from his present job.

Black and Lamb exchanged e-mail messages regarding possible opportunities, but in September 2003, Black expressed dissatisfaction with their communication. He wrote in an e-mail message that "[s]omehow, I must arrange some face-to-face time with you" because "I don't believe we are truly communicating." Black and another African-American employee, Lester Smith, traveled to the Pax River facility shortly thereafter, where they discussed career development with Lamb. Lamb said that Black and Smith tried to persuade him to leave Pax River for the larger St. Louis facility, and told him that he would be able to work under them in St. Louis. Lamb said that Black told him that African-American employees needed to stick together in order to get ahead in the company, which he said Black characterized as a "red neck organization." During that meeting, the plaintiff told Black and Smith that he had filed an Equal Employment Opportunity Commission (EEOC) complaint regarding his treatment at the company. Black said in an affidavit that before that time he had been unaware that Lamb had filed an EEOC complaint. Lamb said

4

that the meeting went on from 7:00 a.m. until 4:30 p.m., and that he felt pressured and intimidated to commit to a transfer.

Lamb objects to other conduct as well. For example, he also alleges that Boeing workers treated him with hostility, failed to inform him of work-related matters or to seek his input, and generally ignored him. In addition, he alleges that his supervisors did not respond to his e-mails or were not sufficiently responsive in their replies, although he acknowledged that other employees in his position told him that managers sometimes disregarded their e-mail messages. He also states that the company did not provide him with feedback regarding promotions that he was denied.

Lamb also claims that Boeing violated Title VII by failing to promote him. His initial complaint cited approximately 75 positions within the company for which he applied and was not hired, but he abandoned all but ten of those claims before the district court. He now further concedes that five of those ten failures to promote cannot give rise to liability as discrete discriminatory or retaliatory actions because they were not the objects of a timely EEOC complaint.

The first decision not to promote Lamb covered by a timely EEOC complaint occurred in September 2003, when Lamb sought a Product Support Technical Specialist position other than his own

5

and was not awarded the job. The hiring manager for the position, Greg Anderson, sought experience handling Earned Value Management Systems (EVMS) and a technical writing background, neither of which were listed on Lamb's resume. Anderson awarded the position to Joe Rogish, who had EVMS and technical writing experience.

Lamb next applied for an Engineer/Scientist position in March 2003. Boeing sought a candidate with a professional engineering degree recognized by the Accreditation Board for Engineering & Technology, and Lamb did not have such a degree. Thomas Nondorf, the hiring manager for the position, awarded the job to Brian Diggle, who had such a degree.

Lamb also alleges a Title VII violation based upon Boeing's failure to award him another Product Support Technical Specialist position in April 2003. Richard Bodzek, the hiring manager for the job, sought an individual with experience in tilt rotor systems. He passed over Lamb, who did not have this experience, and hired David Jones, who did.

In July 2003, Lamb applied for an Engineer/Scientist position that he alleges he was denied in violation of Title VII. Thomas Cummings, the hiring manager for the job, sought a person with a systems engineering background, and the plaintiff's resume

6

did not reflect such experience. Cummings hired Wendy Gilkerson, who had such a background.

All the hiring managers for these positions said in affidavits that they did not know Lamb was African-American and did not know that he had filed a complaint with the EEOC. Lamb introduces no evidence to the contrary. In the final formal promotional decision concerning which Lamb raised a timely Title VII challenge, the hiring manager, David Black, did know of Lamb's race and EEOC complaint, but never reviewed Lamb's resume for the job opening because the resume was screened out based upon an automated keyword credential search. Boeing's online job application system, which eliminates applications that contain no reference to job qualifications that are deemed essential, screened out Lamb's resume for the April 2004 Product Support Technical Specialist opening before it reached Black because the job required experience with Navy maintenance work and Lamb's resume did not contain the term "Navy."

Lastly, Lamb alleges that Boeing discriminated against him by failing to make him a "team leader" after Brian Diggle, the team leader on the day shift, left his position. Boeing presented evidence that Mark Milbrandt, the on-site supervisor at the St. Louis facility, regarded the "team leader" posts as

7

unnecessary, and decided to eliminate all team leaders when Diggle vacated his post.

Lamb filed an EEOC complaint on July 28, 2003, alleging that he suffered discrimination, retaliation, and a hostile work environment. He filed suit on October 31, 2003, raising Title VII claims and a claim of intentional infliction of emotional distress under Maryland law. The district court granted summary judgment to Boeing on the state law claim and Lamb does not appeal that disposition.

The district court granted summary judgment to Boeing on the Title VII claims as well. It observed that Lamb was time-barred from alleging that Boeing discriminated against him by failing to promote him prior to October 1, 2002, because prior denials were not within the scope of Lamb's EEOC complaint due to their timing. Five alleged discriminatory failures to promote were not time-barred, but the court concluded that in each of those cases, Boeing promoted or hired a candidate it considered more qualified, and Lamb failed to show the company's merit-related reasons were pretextual. The district court also concluded that Lamb failed to establish a prima facie case that he had been subjected to a hostile work environment. Lamb appealed the grant of summary judgment with respect to the Title VII claims. We review the grant of summary judgment de novo and affirm.

8

II.

Lamb argues first that the district court erred in dismissing his claims that he was not awarded promotions because of racial discrimination and retaliation for his EEOC complaint. To make a prima facie case of discriminatory failure to promote under the Title VII framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff must show: (1) he is a member of a protected group; (2) he applied for a position; (3) he was qualified for the position; and (4) he was rejected from the position under circumstances giving rise to an inference of unlawful discrimination. Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1129 (4th Cir. 1995). An employer then has the burden of offering a legitimate, non-discriminatory reason for its actions. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996). If the employer presents such a reason, the employee must show that the reason was a pretext for impermissible criteria. Id. The plaintiff bears the ultimate burden of proving discrimination. Id.

Retaliation claims function in parallel. A plaintiff must make a prima facie case by showing that

> (1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action.

9

<u>Beall v. Abbott Labs.</u>, 130 F.3d 614, 619 (4th Cir. 1997). The burden then shifts to the employer to rebut the presumption by articulating a legitimate non-retaliatory reason for its actions. <u>Id.</u> The plaintiff, who again bears the ultimate burden of proof, can then prevail only by showing that the employer's reason was false and that the employer took the action at issue as retaliation. <u>Id.</u>

We agree with the district court that even if Lamb met his prima facie burdens, summary judgment was appropriate because Boeing offered legitimate reasons for its promotional decisions and Lamb adduced no evidence to rebut those reasons. In no case where Boeing actually filled a position that Lamb sought was there any evidence that the hiring manager knew both that Lamb had sought the position and that he was African-American. Lamb observes that other company employees knew of his race and EEOC complaint, but he provides no evidence from which a fact-finder could infer that those employees participated in the hiring process for the five promotions.

In addition, in each case, the company provided evidence that the person hired was selected because he or she possessed a skill Lamb lacked. "[R]elative employee qualifications are widely recognized as valid, non-discriminatory bases for any

adverse employment decision." Evans, 80 F.3d at 960. Lamb offers no evidence that could give rise to an inference that the differences in qualifications between Lamb and the successful candidates were used as pretexts. He notes that in some cases the credential that Boeing officials cited as the basis for their hiring decision was not listed in the job description. But Title VII does not impose the impracticable obligation of anticipating and recording before the fact a company's valuation of every credential with which it might be presented, and we cannot sanction the inference that the credentials upon which the hiring managers said they relied were pretexts merely because they were not listed in advance.

Lamb also notes that he was denied the Engineer/Scientist position for which he applied in July 2003 even though the company sought a candidate with "educational credentials meeting the classification standards for engineers and typically a minimum of 8 years' experience in an engineer classification." While Lamb alleges that he possessed these credentials and the individual selected for the position did not, Lamb did not possess other credentials that the hiring manager said he sought. The hiring manager preferred a candidate with knowledge of computer simulations and configurations management for a job described as involving "[p]rovid[ing] missile defense system and

11

architecture modeling and simulation engineering and analysis." Lamb's resume did not reflect such experience, and the successful candidate was a computer analyst with configurations management experience. Lamb offers no reason to doubt that Boeing found the relevant credentials that Lamb lacked to be more essential than the credentials he possessed.

For other jobs, Lamb acknowledges that he lacked credentials the company required, such as experience with rotary aircraft or a degree accredited by the Accreditation Board for Engineering and Technology, but he asserts that the company ought not to have required those credentials. He also notes that a Boeing manager who was not responsible for filling the positions at issue said that if he were hiring someone for a hypothetical customer-contact position relating to rotary aircraft, he would not have preferred applicants with rotary aircraft experience. The fact that Lamb or another employee had different views of the skills required from the hiring managers charged with filling the positions does not, however, make the hiring managers's reasons pretextual.

In addition, while Lamb urges the Court to consider the five other denials that he briefed below as "background evidence" relevant to the five claims that were not time-barred, citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112-13

12

(2002), Boeing offered merit-related reasons for its hiring decisions in each of those cases and nothing in the company's handling of those claims raises a red flag of discriminatory treatment that justifies viewing the discrete promotional decisions before this Court in a different light.

III.

We also affirm the grant of summary judgment to Boeing on Lamb's claims of a racially hostile work environment. To state a claim for a hostile work environment, a plaintiff must show the conduct at issue was (1) unwelcome; (2) based on protected status; (3) sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive atmosphere; and (4) imputable to the employer. See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998).

The treatment that forms the basis of Lamb's complaint does not amount to conduct "severe or pervasive enough to create an objectively hostile or abusive work environment" when judged from the perspective of a "reasonable person" as the case law requires. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Lamb emphasizes the unquestionably offensive "Massah Dave" comment and invokes a "race conscious reasonableness standard," arguing that an African-American employee could reasonably

13

construe the statement as more offensive than a white employee would.  The subsequent actions of Boeing and Lamb himself, however, make clear that this is not a case where an isolated epithet is actionable: Boeing ensured that a prompt apology to Lamb was forthcoming from Dickson, Lamb signed a statement indicating a willingness to move forward, and Lamb and Dickson had a professional relationship thereafter.

The other conduct of which Lamb complains do not save his hostile environment claim.  Lamb said that he felt intimidated and harassed when Black and Smith met with him and urged him to transfer out of Pax River to gain experience more readily available at larger facilities.  He also alleges that the two men referred not to him but to the company in racially disparaging terms, calling it a "red neck organization" and suggesting he should stick together with black employees like themselves.  These inappropriate statements were not disparaging to the plaintiff, and they occurred in a meeting urging Lamb to take advantage of opportunities to advance within the company.  The meeting occurred after professional-development discussions in which Lamb had willingly participated -- discussions that began before Dickson's offensive remark and prior to the EEOC complaint of which Black had been unaware.  We agree with the district court that the meeting, as described by Lamb and containing

14

discussions designed to assist his advancement, falls far short of creating an abusive workplace atmosphere. The additional alleged workplace slights, such as unreturned e-mails from supervisors, cannot be causally linked on this record to Lamb's race or protected status, and do not in any event amount to serious misconduct creating an abusive atmosphere actionable under Title VII. See id., 510 U.S. at 21-23.

The judgment of the district court is therefore affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the district court and argument would not aid the decisional process.

AFFIRMED